[No. 24713. Department One. January 4, 1934.]

LILLIAN C. NORDIN, *Appellant,* v. COMMERCIAL CASUALTY INSURANCE COMPANY, *Respondent.*[1]

[1]Reported in 28 P. (2d) 259.

*Thomas Balmer* and *A. J. Clynch,* for appellant.
*Pearson & Potts,* for respondents.

STEINERT, J.—This action was brought to recover the full amount of a death benefit specified in an accident insurance policy. The answer admitted certain of the allegations of the complaint and denied others, and then set forth two affirmative defenses: (1) That death was not the result of accidental bodily injury; and (2) that the deceased, by reason of a change of occupation, had placed himself under a different classification of risks, and that the beneficiary was, therefore, entitled to recover, if at all, only a reduced portion of the indemnity specified in the policy. The reply denied the matter alleged in the first affirmative defense, and as to the second, alleged that the reduced indemnity clause set forth in the policy, and on which defendant relied, was null and void because it did not comply with certain requirements of the statute.

Upon a trial before a jury, a verdict in the sum of ten thousand dollars, the full amount of the policy, was returned. Defendant moved for a judgment notwithstanding the verdict and, in the alternative, for a new trial. The court, after taking the matter under advisement, rendered a memorandum opinion in which it stated that the motion for judgment notwithstanding the verdict would be denied, and that the motion for new trial would also be denied, if plaintiff would file her consent to the entry of judgment for two thousand dollars and costs, otherwise the motion would be granted. Plaintiff did not file such consent. The defendant, however, filed its consent to the entry of such judgment. This constituted a waiver by the defendant

of its motion for a new trial. Thereafter, the court entered its order denying both of the above motions of the defendant, and thereupon entered judgment for plaintiff in the sum of two thousand dollars. Plaintiff has appealed from that portion of the judgment which reduced the amount of recovery.

On February 18, 1929, respondent issued to S. H. Nordin, now deceased, an accident insurance policy in the principal sum of ten thousand dollars. The policy contained a number of provisions for weekly indemnity, and also for double, special and optional indemnities according to prescribed schedules. At the time that the policy was issued, Mr. Nordin's occupation was that of "Security Salesman, Bonds and General Securities," as designated in the contract of insurance. The policy contained a provision for a reduction of indemnity in the event of injury to the insured after change of occupation or while doing an act or thing pertaining to an occupation classified as more hazardous. This provision appears as Section A of the "Standard Provisions" of the policy, and will be referred to in more detail a little later.

Sometime prior to July 18, 1931, Mr. Nordin became superintendent of an oyster farm, and a part of his time, at least, was devoted to that occupation. Respondent contended at the trial that Mr. Nordin had *changed* his occupation, bringing him within a different classification of risks; appellant contended that he had merely taken up an *additional* occupation while still pursuing his regular occupation as designated in the policy. At any rate, the facts are that, on July 18, 1931, Mr. Nordin, while on the deck of a tugboat, and while engaged in discharging his duties in connection with the oyster industry, took part in an emergency rescue of two workmen aboard a foundering skiff

alongside the tugboat. Within two hours after that occurrence, Mr. Nordin suddenly died.

Appellant's contention at the trial was that death was caused by a thrombus in the coronary artery superinduced by the severe exertion and strain which Mr. Nordin underwent in rescuing the two men. Respondent's contention was that death resulted from arteriosclerosis of long standing, and that the particular event was but an incident, and not an accident at all. The respondent now admits, however, that there was sufficient evidence to make the question of accidental death one for the jury. We agree with this concession made by respondent, and hence will not concern ourselves further with that question of fact.

Appellant, by her pleading and in her counsel's argument in the brief, contends that Section A of the "Standard Provisions," referred to above, is null and void because it does not comply with the requirements of the statute now appearing as Rem. Rev. Stat., § 7234. Section A of the policy reads as follows:

"(1) This policy includes the endorsements and attached papers, if any, and contains the entire contract of insurance except as it may be modified by the Company's classification of risks and premium rates in the event that the Insured is injured after having changed his occupation to one classified by the Company as more hazardous than that stated in the policy, or while he is doing any act or thing pertaining to any occupation so classified, except ordinary duties about his residence or while engaged in recreation, in which event the Company will pay only such portion of the indemnities provided in the policy as the premium paid would have purchased at the rate but within the limits so fixed by the Company for such more hazardous occupation.

"If the law of the state in which the Insured resides at the time this policy is issued requires that prior to its issue a statement of the premium rates and classifi-

cation of risks pertaining to it shall be filed with the state official having supervision of insurance in such state, then the premium rates and classification of risks mentioned in this policy shall mean only such as have been last filed by the Company in accordance with such law, but if such filing is not required by such law then they shall mean the Company's premium rates and classification of risks last made effective by it in such state prior to the occurrence of the loss for which the Company is liable.''

This provision appears at the top of page 3 of the policy and is printed in bold face type of ten-point size.

Chapter 31, Laws of 1921, p. 103, § 1, subd. (b), so far as it is material here, provides as follows:

''No such policy shall be so issued or delivered . . . (6) unless the exceptions of the policy be printed with the same prominence as the benefits to which they apply: *Provided, however,* That any portion of such policy which purports, by reason of the circumstances under which a loss is incurred, to reduce any indemnity promised therein to an amount less than that provided for the same loss occurring under ordinary circumstances, shall be printed in bold face type and with greater prominence than any other portion of the text of the policy.''

This section was re-enacted, with slight and immaterial changes, in chapter 124, Laws of 1929, p. 284 § 2 (Rem. Rev. Stat., § 7234).

It is conceded that Section A of the policy is printed in the proper size and style of type, but it is contended by appellant that it is not printed ''with greater prominence than any other portion of the text of the policy.'' The respondent, in turn, contends, among other things, that this section of the statute has no application at all to Section A of the policy; that Section A has reference only to a *change of occupation,* while the statute has reference to losses occurring under *pe-*

*culiar or extraordinary circumstances.* Upon these contentions, much of the dispute centers, and it is but fair to the trial court to say that they appear to have afforded the principal question presented to that court on the respective motions subsequent to the verdict.

Interesting as those questions are, from the standpoint of law, and important as they might otherwise be, we think that they become immaterial here, in view of our conclusion upon another matter which is decisive of this case. We therefore assume, without deciding, that Section A of the policy was printed with the degree of prominence required by the statute; we will further assume, without so deciding, that the particular provision of Rem. Rev. Stat., § 7234, does not apply to Section A of the policy. Both of these assumptions, it will be observed, are in respondent's favor.

The determinative feature of this case, as we view it, rests upon the respondent's failure to establish the fact that it had filed with the insurance commissioner of this state a copy of its classification of risks pertaining to the policy in suit, as required by the statute.

Rem. Rev. Stat., § 7233, provides that no accident insurance policy shall be issued or delivered until a copy of the form thereof and of the classification of risks *pertaining thereto* have been filed with the insurance commissioner. Rem. Rev. Stat., § 7241, provides:

"A policy of insurance against loss or damage from the sickness, or the bodily injury or death, of the insured by accident, issued in violation of sections 7233, 7234, 7235, 7237 and 7238 of this act shall be held valid but shall be construed as provided in said sections and when any provision in any such policy is in conflict with any provisions of said sections the rights, duties and obligations of the insurer, the policy holder and

the beneficiary shall be governed by the provisions of said sections.''

Thus it will be seen that the policy is to be held a valid and binding contract, but, in so far as it conflicts with § 7233, *supra,* the provisions of the latter shall govern. Expressed according to result, the policy does not draw to itself, as part thereof, any classification of risks therein referred to, unless a form of such classification *pertaining to* the particular policy has been filed in accordance with law.

The policy recites in Section A, above quoted, that it is the *entire contract* of insurance, except as it may be modified by the company's classification of risks. It further provides that, if the law of the state in which the insured resides requires that there be filed with the proper state official a classification of risks pertaining to such policy, then the classification mentioned in the policy shall mean only such as has been last filed by the company in accordance with such law. These provisions follow the requirements specified in Rem. Rev. Stat., § 7235. As we have already seen, Rem. Rev. Stat., § 7233, requires the filing of such classification with the insurance commissioner. It will be remembered that the classification, when filed, must pertain to the form of policy issued. It was, therefore, incumbent upon respondent to establish a classification of risks, filed with the commissioner, which modified *this policy,* as otherwise the indemnity provided in the contract would be unaffected.

It will be borne in mind that the policy here in suit is form 104-A. The respondent sought to prove, as it was required to do, that a copy of its classification of risks pertaining to form 104-A had been filed in accordance with law. The evidence, however, only establishes that the classification of risks as filed pertain to

"New Ultimate Accident Policy *Form 2-H.*" There is no evidence that a classification of risks pertaining to *form 104-A* had ever been filed or approved. *Form 2-H* does not appear in the record, and the evidence apprises us of nothing concerning either its form or its content. There was no proof that form 104-A and form 2-H were identical, or even similar. We can not assume that they were the same.

It is a matter of common knowledge that many forms of policies are filed with the insurance commissioner by many different insurance companies, and that a particular company may, from time to time, successively file many different forms. Differences in classifications of risks may result from differences in forms of policies. Under the statute the form of classification of risks must *pertain to* the form of policy filed. There must, therefore, be some record connection between the two.

Respondent was seeking to escape liability in this case by virtue of the protection of the statute. To escape liability, it was necessary for it to bring its proof within its defense. This, it failed to do. Its liability is, therefore, measured by the terms of the contract of insurance, unaffected by any extraneous and unconnected classification of risks not pertaining to the policy.

The appellant having established liability under the terms of the policy, and the respondent having failed to show that the insured came within a different classification of risks, calling for a reduced indemnity, the judgment must be, and therefore is, reversed, with direction to the trial court to reinstate the verdict and to enter its judgment thereon.

BEALS, C. J., MILLARD, MAIN, and MITCHELL, JJ., concur.